**In re BLUE RIDGE MOTEL ASSOCIATES, Debtor.**

**Bankruptcy No. 89–02413.**
**Adv. No. 89–0333.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 18, 1989.

John J. Winter and William A. Harvey, Philadelphia, Pa., for Liberty Sav. Bank.

Robert G. Sable, Pittsburgh, Pa., for debtor.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD,
Bankruptcy Judge.

The issue before the court is whether fees paid by debtor-in-possession's (hereafter Debtor) motel customers constitute cash collateral under 11 U.S.C. § 363(a). The security agreement and financing statement provide that Equibank, whose successor in interest is Liberty Savings Bank (hereafter Mortgagee), the movant herein, has a security interest in, *inter alia*, "all of Mortgagor's right, title and interest in and to all contracts and agreements relative to the construction, management, use and occupancy of the Improvements.... Together with all proceeds of

the conversion, voluntary or involuntary, of any or all of the foregoing into cash...."

 The Debtor argues that in order for the Mortgagee to be properly secured in the motel user fees it is required to use the term "accounts" or "accounts receivable" in its financing statement to describe the property in which it claims a security interest. Pennsylvania has adopted the relevant provisions of the Uniform Commercial Code (hereafter U.C.C.) at Title 13, Pa.C.S.A. Section 9106 of the U.C.C. defines "accounts" to include "[a]ny right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." Section 9110 of the U.C.C. provides that "[f]or the purposes of this division any description of personal property ... is sufficient whether or not it is specific if it reasonably identifies what is described."

Debtor cites *In re Toppo*, 474 F.Supp. 48 (W.D.Pa.1979), and *Matter of H.L. Bennett Co.*, 588 F.2d 389 (3d Cir.1978), in support of its argument that Mortgagee's description in its financing statement is not specific enough because it does not contain the words "account" or "accounts receivable." Those cases recognize the principle that terms more general than the quoted language will not pass muster. However, here the financing statement refers to "all contracts and agreements relative to the construction, management, use and occupancy of the Improvements" and their proceeds. A motel guest's agreement to pay for use of a room and the later cash proceeds derived therefrom clearly fall within this description. This is more specific than the general terms permitted by the U.C.C. and describes the types of collateral in sufficient detail to alert potential creditors of the existence of a security interest as required by the U.C.C. *See* 1972 Comments to Section 9402(a); *Matter of Bennett, supra*, at 391.

 There has been no allegation that required documents have been untimely filed or filed in incorrect places. We therefore find that the "notice" provisions of the U.C.C. (*see, e.g.,* 9402(a) and Comments thereto) are met, the Mortgagee is secured and perfected in the motel user fees, and Debtor is using these fees as cash collateral, over the Mortgagee's objections, without court authority. Accordingly, we will schedule an evidentiary hearing to determine the Mortgagee's request for adequate protection and/or to prohibit Debtor's use of cash collateral pursuant to 11 U.S.C. § 363(c)(2)(B).[1]

An appropriate order will be entered.

---

1. Both parties refer to *In re Greater Atlantic & Pacific Investment Group, Inc.,* 88 B.R. 356 (Bankr.N.D.Okla.1988), which held that hotel user fees were not covered by the creditor's security interest in rents. It is conceded by both sides that the user fees at issue herein are not rents under the terms of their agreement. Therefore, the case is inapposite. The agreement at issue in *A & P* did not contain "use and occupancy" language.